**SUMMIT MEDICAL CENTER OF ALABAMA, INC.; New Women's Health Care; Beacon Women's Center; on behalf of themselves and their patients seeking abortions, Plaintiffs,**

v.

**Bob RILEY, in his official capacity as Governor for the State of Alabama and his agents and successors; Bill Pryor, in his official capacity as Attorney General for the State of Alabama and his agents and successors;**

**Donald Williamson, M.D., in his official capacity as State Health Officer for the Alabama Department of Public Health and his agents and successors; and Ellen Brooks, in her official capacity as Montgomery District Attorney and as representatives of the class of district attorneys for the State of Alabama, Defendants.**

No. CIV.A.02–A–1064–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 29, 2003.

See, also, 227 F. Supp.2d 1194; 284 F. Supp.2d 1350.

Angela Hooton, Linda A. Rosenthal, New York City, David A. Gespass, Gespass & Johnson, Birmingham, AL, Mark Wayne Sabel, Sabel & Sabel, P. C., Montgomery, AL, for Plaintiffs.

A. Eric Johnston, Birmingham, AL, Charles B. Campbell, William H. Pryor, Jr., Office of the Attorney General, John R. Wible, Patricia Elaine Ivie, Department of Public Health, Troy R. King, William D. Dill, Office of the Governor, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. FACTS AND PROCEDURAL HISTORY

This case is before the court on a Motion for Partial Summary Judgment (Doc. # 107), filed by the Plaintiffs on November 25, 2003.

The Plaintiffs are a group of health care facilities and physicians who provide abortion services in the State of Alabama. They are challenging the State of Alabama's Woman's Right to Know Act ("the Act"). The Defendants include the Governor of the State of Alabama, the Attorney General, the State Health Officer, and a class of prosecuting attorneys.

In addition to their Complaint, the Plaintiffs filed a Motion for Temporary Restraining Order/Preliminary Injunction. The court held a hearing on the Plaintiffs' motion and issued an Order and Preliminary Injunction granting the Motion for Preliminary Injunction in part and denying it in part. See Summit Med. Ctr. v. Siegelman, 227 F.Supp.2d 1194 (M.D.Ala. 2002).

The Plaintiffs and Defendants subsequently filed cross motions for partial summary judgment. The court granted in part and denied in part the Plaintiffs' Motion for Partial Summary Judgment, and granted in part and denied in part the Defendants' Motion for Partial Summary Judgment and to Dismiss.

The Plaintiffs and the Defendants now have entered into settlement negotiations and have represented to the court that they have been unable to reach an agreement as to a particular issue. The Plaintiffs, therefore, have filed a Motion for Partial Summary Judgment as to that issue, which is the application of the Act to women who are carrying fetuses with lethal anomalies.

The Act mandates that the Alabama Department of Public Health ("ADPH") has 180 days from the Act's effective date to publish the following printed materials for distribution:

(1) Geographically indexed printed materials designed to inform the woman of public and private agencies and services available to provide medical and financial assistance to a woman through pregnancy, prenatal care, upon childbirth, and while her child is dependent. The materials shall include a comprehensive list of the agencies, a description of the services offered, and the telephone numbers and addresses of the agencies.

(2) The printed materials shall include a list of adoption agencies geographically indexed and that the law permits adoptive parents to pay the cost of prenatal care, childbirth and neonatal care.

(3) Printed materials that inform the pregnant woman of the probable anatomical and physiological characteristics of the unborn child at two-week gestational increments from fertilization to

full term. It shall include color photographs of the developing child at each of the two-week gestational increments, a clear description of the unborn child's development, any relevant information on the possibility of the unborn child's survival, and dimensions of the unborn child. The materials shall be realistic, clear, objective, non-judgmental, and designed to convey only accurate scientific information about the unborn child at the various gestational ages.

(4) The materials shall contain objective information describing the methods of abortion procedures commonly employed and the medical risks of each, and the medical risks associated with carrying a child to term.

(5) The printed materials shall list the support obligations of the father of a child who is born alive.

(6) The printed materials shall state that it is unlawful for any individual to coerce a woman to undergo an abortion, that any physician who performs an abortion upon a woman without her informed consent may be liable to her for damages in a civil action at law.

(7) The material shall include the following statement: "There are many public and private agencies willing and able to help you to carry your child to term, and to assist you and your child after your child is born, whether you choose to keep your child or place him or her for adoption. The State of Alabama strongly urges you to contact those agencies before making a final decision about abortion. The law requires that your physician or his or her agent give you the opportunity to call agencies like these before you undergo an abortion."

*Ala.Code* § 26–23A–5 (Supp.2002). These materials "shall be in a bound booklet, shall contain large clear photographs, and shall be printed in a typeface large enough to be clearly legible." *Id.* The ADPH must also create a video tape detailing much of the information in the printed materials as well as a consent form in order for the patient to verify that she gives informed consent pursuant to the Act. *Ala.Code* § 26–23A–6.[1] In addition, the Act requires a physician or qualified person to inform the woman in person of additional information prior to an abortion. *Ala.Code* § 26–23A–4.

The Act also contains a provision that excuses the physician or qualified person from compliance with the Act's informed consent provisions in the event of a "medical emergency." *Id.* This court, in ruling on the Motion for Preliminary Injunction previously filed by the Plaintiffs, concluded that the Act's definition of "medical emergency" is broad enough to include both mental and psychological health within its parameters.

In this court's Order on the Motion for a Preliminary Injunction previously filed by the Plaintiffs, this court also stated, in relevant part, as follows:

> After hearing the presentation of evidence, the court has reservations about the constitutionality of applying the Act's informed consent provisions to women in two situations: 1) women diagnosed as carrying a fetus with a lethal anomaly,[2] and 2) women with ectopic pregnancies. In *Casey,* the Supreme Court stated that informed consent statues further the dual state interests of protecting maternal health and fetal life. *Casey,* 505 U.S. at 846, 112 S.Ct. 2791.

---

**1.** Unlike the mandatory printed materials, the video tape need only be made available to those who want to see it. *Ala.Code* § 26–23A–6.

**2.** The court understands the term lethal fatal anomaly to mean that the child would die at birth or be stillborn.

As the court understands the evidence, women with ectopic pregnancies and women carrying unborn children with lethal fatal anomalies have no chance of successfully bringing a living child to term. Therefore, regardless of the degree of impact on the woman's psychological health, requiring physicians to provide these women with the information called for in the Act serves neither of the state interests recognized in *Casey*. In these two circumstances, the court fails "to see how the provision of this largely irrelevant information helps a woman to facilitate the wise exercise of her abortion right." *Karlin*, 188 F.3d at 489 n. 16.

Accordingly, the court preliminarily enjoined the application of the Act to women diagnosed with ectopic pregnancies and women carrying fetuses with lethal anomalies.

It is the injunction against application of the Act to women carrying fetuses with lethal anomalies which the Plaintiffs seek to make permanent through the instant Motion for Partial Summary Judgment.

## II. *DISCUSSION*

In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the Court held that the right of a woman to decide for herself whether to terminate a pregnancy must be protected from "undue burdens" imposed by state regulation. *Id.* at 876, 112 S.Ct. 2791. More specifically, state regulation must not have "the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.* at 877, 112 S.Ct. 2791. Subsequent to viability, however, the state may either regulate or proscribe abortion except when necessary to preserve the life or health of the mother. *Id.* at 879, 112 S.Ct. 2791. As earlier stated, the Court explained that the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child. *Id.* at 846, 112 S.Ct. 2791.

In *Karlin v. Foust*, 188 F.3d 446, 489 n. 16 (7th Cir.1999), the Seventh Circuit stated in dicta that a statute which required specified information be provided to women carrying fetuses diagnosed with fatal anomalies failed to further either of the legitimate state purposes recognized in *Casey*. The Seventh Circuit explained that the mandatory providing of information relating to child support obligations and state child-rearing assistance does not help a woman facilitate the wise exercise of her abortion right. *Id.*

The Plaintiffs in the instant case contend that providing women who are carrying fetuses with fatal anomalies information such as the father's legal liability to support a child and alternatives to abortion such as adoption, not only does not serve the state interest of protecting the health of the women, but also would have a harmful effect on the mental health of those women.

The Defendants insist that there is no need to make permanent this court's preliminary injunction against application of the Act to women carrying fetuses with fatal anomalies because the medical emergencies exception, as interpreted by this court, covers the circumstances identified by the Plaintiffs. The Defendants essentially concede, however, that some of the information disclosed in the informational materials which have been prepared pursuant to the Act serve no legitimate state interest when disclosed to a women carrying fetuses with fatal anomalies. The Defendants argue, however, that the Plaintiffs read *Karlin* too broadly, and that *Karlin* does not stand for the proposition that no information disclosed pursuant to an informed consent statute can constitu-

tionally be disclosed to women carrying fetuses with fatal anomalies. They argue that "Alabama's informational materials contain useful information about fetal development, abortion procedures, and contraception that could be particularly helpful to a woman seeking an abortion...." Defendants' Objection and Opposition at page 5.[3]

As the Plaintiffs point out, the information to be disclosed pursuant to the Act is included within informational materials, unlike the information to be disclosed in *Karlin* which was to be disclosed orally by a physician who could use discretion in deciding which information to disclose. *See Karlin,* 188 F.3d at 454–55. Further, the informational materials which have been provided to this court as having been prepared pursuant to the requirements of the Act include information about child support, adoption, and fetal gestational development. § 26–23A–5. The court cannot conclude that any legitimate state interest in a woman's health is served by providing this information to women who are carrying fetuses with fatal anomalies. Accordingly, the court finds the reasoning in *Karlin* to be persuasive, and reaffirms its own conclusion that the state interests identified in *Casey* are not served by providing to women carrying fetuses with fatal anomalies the informational materials which have been prepared pursuant to the Act. Accordingly, the court concludes that the Plaintiffs' Motion for Partial Summary Judgment is due to be GRANTED, and this court's preliminary injunction of application of the Act to women carrying fetuses with fatal anomalies is due to be made permanent.

### III. *CONCLUSION*

For the reasons stated above, the Plaintiffs' Motion for Partial Summary Judgment is due to be and is hereby ORDERED GRANTED.

---

**3.** The Defendants also contend that the Plaintiffs' motion is untimely. The court concludes, however, that given the manner in which this case has progressed, that is, partly by dispositive motion and partly by settlement, consideration of the Motion for Partial Summary Judgment is appropriate.